**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert Glenn WYNE, Defendant–
Appellant.**

**No. 94–4131.**

United States Court of Appeals,
Tenth Circuit.

Dec. 2, 1994.

Scott M. Matheson, Jr., U.S. Atty., and Richard D. McKelvie, Asst. U.S. Atty., Salt Lake City, UT, for plaintiff-appellee.

John D. O'Connell, Salt Lake City, UT, for defendant-appellant.

Before SEYMOUR, Chief Judge, and HOLLOWAY and McKAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

Defendant Robert Wyne brings this appeal from the sentence imposed by the district court after his plea of guilty to the charge of attempting to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846 on or about December 1, 1993, in Utah. We have jurisdiction under 18 U.S.C. § 3742(a).

## I

The presentence report prepared by the United States Probation Office indicated that defendant had one prior conviction for theft, for which one point was assigned pursuant to § 4A1.1(c) of the United States Sentencing Commission, Guidelines Manual (Nov.1993) (hereinafter "Guidelines" or "USSG"). The report also showed that defendant had 13 other prior convictions for which no points were added because these convictions were outside the relevant time periods established by the Guidelines.[1] Before sentencing occurred, the government moved the court pursuant to § 5K1.1 (substantial assistance to authorities) to depart from the guideline range determined by the Probation Department, recommending a two-level reduction in offense level, I R.Doc. 69,[2] which was granted.

Based upon the recommended offense level of fifteen and the calculated criminal history category of I, the government requested a sentence within the range of 18–24 months.

1. The presentence report showed that Wyne had eight convictions in the years 1956 through 1960 for such offenses as larceny, trespassing, assault on a police officer, simple assault, and breaking and entering. The sentences imposed for these offenses ranged from 30 days (in three instances) to a maximum of one year in a single instance. The sentences for all eight of these convictions total about 33 months. In 1970 Wyne was convicted of assault on a female and was sentenced to four years on probation. From 1974 to 1982 Wyne was convicted of "DUI" four times, receiving sentences ranging from five weekends to six months in jail. The single counted conviction, for theft, was in 1985 and resulted in a suspended sentence of 12 months in jail and an unspecified period of probation, from which Wyne was discharged in 1988. III R. at 8–10.

2. The government agreed at sentencing that Wyne's base offense level should be 20, rather than 24; that a weapon in Wyne's bedroom was not connected to the offense and should not be included in the computation; and that there should be a downward departure three levels for acceptance of responsibility to offense level 17. The court adopted these three modifications. Answer Brief of Plaintiff–Appellee at 3–4. Furthermore, as noted in the text, the government moved to depart downward two more levels because of defendant's assistance to the authorities, which the court granted.

The district court, however, sua sponte decided to raise the defendant's criminal history category from category I to category III, resulting in a sentencing range of 24 to 30 months.[3] The court then sentenced defendant to 30 months of imprisonment. In this appeal, defendant challenges only the decision to depart upward in the criminal history category and the district court's explanation of the reasons for the extent of the departure.

## II

■■■ Our review of departures from the Guidelines involves three stages. *United States v. White,* 893 F.2d 276, 277–79 (10th Cir.1990). Initially, we review de novo the district court's stated reasons for departing upward. *Id.* The government contends, however, that in this case our review should be only for plain error, because defendant did not object to the departure at the sentencing hearing. The government cites our decision in *United States v. Alessandroni,* 982 F.2d 419 (10th Cir.1992). As we explained in *Alessandroni,* however, "the imposition of a sentence based on an erroneous interpretation of the law constitutes plain error." 982 F.2d at 420. Thus, our review of the justification for upward departure is still de novo.

As we stated in *White* and have repeated on numerous occasions:

[I]f the district court does not explicitly set forth the considerations that motivate its decision to depart from the Guidelines, we will not speculate as to what those considerations may have been. Section 3553(c)(2) mandates that the district court explicitly state its reason for departing from the Guidelines and we must vacate the sentence if the district court fails to do so.

*White,* 893 F.2d at 278.

In the instant case, the sentencing court gave this explanation:

[I]n reviewing the criminal history category of one and reviewing the very extensive prior adult criminal conviction record of this defendant even though it is prior to 10 years from this offense, in view of the full realization of it, I think 14 offenses, I'm going to adjust the criminal category to more adequately reflect the correct criminal category of this defendant from one to 3, so that we end up in a total offense level of 15 with a criminal history category of 3 and the resulting guideline range of 24 to 30 months.

Tr. at 16–17.

The starting point for analysis, as always, is that the sentencing court must impose a sentence within the range set by the Guidelines unless the court finds the existence of "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission ... that should result in a sentence different from that described." 18 U.S.C. § 3553(b). The Guidelines do recognize that in a particular case the defendant's criminal history may not be adequately represented by the result of the prescribed calculation. Accordingly, the district court may consider adjusting the criminal history category "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes...." USSG § 4A1.3 (policy statement).

The Sentencing Commission further has instructed, with respect to criminal conduct not counted in the initial determination of the criminal history category because it occurred outside the relevant time periods, that[4]

If the court finds that a sentence imposed outside this time period is evidence of similar, or serious dissimilar, criminal conduct, the court may consider this information in determining whether an upward departure

---

3. The presentence report had noted the possibility of such a departure without recommending it. III R. at 23.

4. Two different time periods are used in the Guidelines, a 15-year period for sentences of imprisonment exceeding one year and one month (unless the defendant's incarceration extended into the 15-year period) and a 10-year period for sentences of imprisonment of at least 60 days. USSG § 4A1.1, comment. (nn. 1–2).

is warranted under § 4A1.3 (Adequacy of Criminal History Category).

USSG § 4A1.2, comment. (n. 8). This application note was amended in 1992 to add the language regarding "serious dissimilar" conduct; the previous version of the note addressed only similar conduct. In the instant case, it is clear that the defendant's prior conduct was dissimilar, and no argument to the contrary is advanced. Thus, the upward departure can only be valid if the record showed "serious dissimilar" conduct by the defendant, not reflected in the criminal history category derived under the Guidelines.

In the recent case of *United States v. Gentry,* 31 F.3d 1039 (10th Cir.1994), the sentencing court had departed upward in determining the defendant's criminal history category on the basis of previous, uncounted offenses. The court had erroneously stated that the previous offenses were related. In remanding the case for resentencing for that reason, we also observed that the court had "failed to specifically find that Defendant's ten uncounted convictions were evidence of 'similar' or 'serious dissimilar' criminal conduct." *Id.* at 1041.

■ Because in this case the upward departure could only have been based on a finding that the uncounted convictions represented "serious dissimilar" conduct, we believe it would be pointless to remand in order for the district court to state so explicitly. It is not necessary for us to speculate what considerations led to the district court's conclusion. Accordingly, we conclude that we may review the upward departure as having been based on an implicit finding of "serious dissimilar" conduct without violating the principle enunciated in *White, supra.*

### III

■ Review of the defendant's record in this case convinces us that it was error to depart from the criminal history category as determined under the Guidelines. We note first that this defendant had never before been given a sentence of imprisonment exceeding one year and one month, a standard used in the Guidelines in setting the number of points assigned to prior convictions within the counting period. USSG § 4A1.1. This,

we believe, gives some indication that Wyne's prior criminal conduct should not be regarded as "serious."

We also believe that little, if any, weight should have been given to the eight misdemeanor convictions which occurred more than 30 years prior to defendant's arrest in the instant case. Nor do we think that the 1970 conviction for assault on a female is evidence of "serious" criminal conduct, based on the record before the district court. In that regard, we note that no evidence was produced regarding Wyne's underlying prior criminal conduct other than the fact of conviction, the offense or offenses included, and the sentence imposed. This is significant because, as Wyne notes in his brief, "assault on a female" in North Carolina, the state of conviction, can consist of mere verbal accosting. *State v. McIver,* 231 N.C. 313, 56 S.E.2d 604 (1949); *State v. Williams,* 186 N.C. 627, 120 S.E. 224 (1924). Production of any proof about the nature of the "assault on a female" in order to establish it was "serious dissimilar" conduct, within the meaning of the Guidelines, rested with the government. "[T]he government bears the burden of proof for sentence increases while the defendant bears the burden of proof for sentence decreases." *United States v. Reid,* 911 F.2d 1456, 1461 (10th Cir.1990), *cert denied,* 498 U.S. 1097, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991); *see also United States v. Levy,* 992 F.2d 1081, 1083 (10th Cir.1993).

Most importantly, we must be mindful of the context in which this determination of seriousness must be made. We do not suggest that assault on a female is not "serious" in the common sense. Rather, we are called upon to distinguish among criminal acts, all of which may, in some sense, be regarded as "serious." Moreover, we must make such distinctions with little guidance from the Sentencing Commission as to its use of the term. With respect to the previous assault charge, however, we note that the commentary in the Guidelines includes a reference to "serious assaults," lending credence to our view that not all assaults are to be considered "serious" crimes in this particular context. USSG § 4A1.3 (policy statement); *see also United States v. Brady,* 928 F.2d 844, 853 (9th Cir. 1991) (finding that previous misdemeanor assaults were not sufficiently serious offenses

to justify departure from the criminal history category calculated under the Guidelines).[5]

We turn last to Wyne's four DUI convictions, the only uncounted convictions on his record within 23 years of the date that he was charged in this case. What we have said concerning the 1970 assault conviction is equally applicable here. We do not in any way condone driving under the influence of alcohol, nor are we unaware of the great cost to society resulting from such conduct. We must, however, follow the intent of the Guidelines, and this requires that our focus remain on distinguishing offenses to be regarded as "serious" from within the realm of all criminal behavior. In this light, we simply cannot agree that these convictions qualify as serious conduct justifying the decision to depart from the criminal history category derived from the Guidelines. *See United States v. Eve,* 984 F.2d 701, 704–05 (6th Cir.1993). *Cf. United States v. Walling,* 974 F.2d 140, 142 (10th Cir.1992) (district court properly included prior conviction for driving while ability impaired in computing criminal history category where the conviction was *within* the applicable ten-year time period). As we have noted, the first rule governing departures is that "departures should rarely occur." *United States v. Jackson,* 921 F.2d 985, 989 (10th Cir.1990) (en banc). We are convinced that this is not such a case. *United States v. Carrillo–Alvarez,* 3 F.3d 316, 320 (9th Cir.1993) ("criminal history is simply not egregious enough to justify a departure.").

Because we find error in the district court's application of the Guidelines, the sentence is **VACATED** and the case is **REMANDED** for resentencing consistent with this opinion. 18 U.S.C. § 3742(f)(1).

---

5. In *Brady,* the court of appeals reversed the trial court's upward departure on two separate grounds. The first reason, for which we have cited the case, was that the prior misdemeanor assault convictions did not reflect sufficiently serious criminal conduct. 928 F.2d at 853. The second basis was that the defendant had not been provided legal counsel in the previous assault cases. The Ninth Circuit panel concluded that use of such uncounseled misdemeanor convic-

tions violated the Sixth Amendment. *Id.* at 853–54.

As the government notes in its brief, the Supreme Court has recently held directly to the contrary of *Brady* on the latter point. *Nichols v. United States,* —— U.S. ——, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994). This development does not, however, affect our agreement with the first reason on which the *Brady* court relied.