FILED
United States Court of Appeals
Tenth Circuit

February 26, 2013

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

BRIAN CHARLES OLINGER,

Defendant-Appellant.

No. 12-4057
(D.C. No. 2:09-CR-00103-DS-1)
(D. Utah)

ORDER AND JUDGMENT[*]

Before **HARTZ**, **EBEL**, and **GORSUCH**, Circuit Judges.

After Defendant Brian Charles Olinger pleaded guilty to violating the terms of his second supervised release, the United States District Court for the District of Utah revoked his release and sentenced him to imprisonment for 24 months and supervised release for life. *See* 18 U.S.C. § 3583(e)(3). Defendant appeals the sentence, arguing that it was substantively unreasonable. He also asserts that the prosecution breached its agreement to recommend 11 months' imprisonment in exchange for Defendant's

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

admission that he violated terms of his release, and that he should therefore have been permitted to withdraw those admissions. Having jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## I. BACKGROUND

On June 30, 2009, Defendant pleaded guilty to failure to register as a sex offender. *See* 18 U.S.C. § 2250. He was sentenced to 15 months' imprisonment and 120 months' supervised release. In addition to the standard conditions of supervised release, the court imposed a special condition prohibiting Defendant from viewing, accessing, or possessing "sexually explicit materials in any format." R., Vol. 1 at 16, ¶ 5. It also imposed a special condition restricting Defendant's use of computers and requiring him to comply with the Limited Internet Access Agreement.

### A.     Violation of First Term of Supervised Release

By the middle of March 2010, Defendant had been released from prison and was serving his first term of supervised release. Several months later his probation officer filed a petition alleging numerous violations of supervised release. Defendant pleaded guilty to three of the alleged violations: failing to comply with computer restrictions by accessing a computer with Internet capability, associating with a convicted felon, and possessing alcohol. Defendant argued that a five-month sentence would provide adequate deterrence. *See United States v. Olinger*, 434 F. App'x 748, 751 (10th Cir. 2011). But the government sought the maximum possible sentence—24 months—because of the surrounding circumstances, including

- 2 -

Defendant's conviction of "a sex offense in Oregon" and his arrival in "Utah as a fugitive," plus his other "multiple sex offenses and fugitive-related charges." *Id.*

The district court sentenced Defendant to 18 months' imprisonment and 120 months' supervised release. It also "reimposed" its "previously imposed special conditions" of supervised release. R., Vol. 1 at 23, ¶ 1. The court explained that Defendant's admission to "using a computer . . . [with] child pornography" on it constituted "a very serious violation" of the terms of his supervised release. *Olinger*, 434 F. App'x at 751 (internal quotation marks omitted). It therefore opted for a sentence that was "more in keeping" with Defendant's conduct. *Id.* (internal quotation marks omitted). Defendant appealed the sentence, and this court affirmed.

### B.     Violation of Second Term of Supervised Release

Defendant's second term of supervised release began on December 23, 2011, when he was released from a federal prison in Petersburg, Virginia. At that time the Bureau of Prisons provided Defendant a bus ticket to Utah and instructed him to report in person within 72 hours to the United States Probation Office for the District of Utah. Defendant failed to do so.

A month later, on January 23, 2012, the United States Marshals Service arrested him in Illinois on a warrant for violating conditions of his supervised release. At a hearing March 20, Defendant pleaded guilty to four of the alleged violations: failing to report to the probation office in Utah as instructed; failing to comply with the Limited Internet Access Agreement; associating with a convicted felon; and

viewing, possessing, or accessing sexually explicit material. Defense counsel then

notified the court that the parties had reached a plea agreement. In exchange for

Defendant's four admissions, the prosecutor agreed to recommend 11 months'

imprisonment. Defendant requested 9 months' imprisonment.

The court took issue with the parties' proposal:

> I've had a review of this case, counsel, and I'm not sure that I can agree to that agreement. Is there more that you wish to present to the court? This case . . . , the history of it, is concerning to the court. The last time that there was a violation [of supervised release by Defendant] the court entered a sentence of 18 months. Now, I can't see why the court should enter a sentence less than what I did before when there's now a re[-]offense or re-violation, and it appears to me to be very serious.

R., Vol. 3 at 16-17. Defense counsel responded by stating that Defendant had lost his

bus ticket after arriving in Chicago and had contacted an acquaintance—a convicted

felon—to secure lodging. He said that Defendant had called a probation officer in

Utah, letting him "know of the problem," *id.* at 19, and that Defendant had

"promptly . . . registered . . . as a sex offender with the Illinois authorities," *id.* at 18.

Defense counsel continued:

> Now there's the issue that he accessed sexually explicit material. . . . [H]e received an image on his cell phone or a couple of images . . . of an adult female . . . . But this was strictly an adult female. And no underage, not even close from what I understand.

*Id.* at 18-19. The prosecutor was then given an opportunity to address the court. She

asserted, among other things, that "it's not just a picture. There is a large amount of

- 4 -

pornography" on "this computer." *Id.* at 21-22. Nevertheless, she still recommended an 11-month sentence.

At the conclusion of the March 20 hearing, the court reiterated its conviction that the history of the case was "very troubl[ing]." *Id.* at 22. It noted that although the advisory sentencing range was 5 to 11 months' imprisonment, *see* U.S. Sentencing Guidelines Manual (USSG) § 7B1.4, the statutory maximum was two years, *see* 18 U.S.C. § 3583(e)(3), "and supervised release is up to life," R., Vol. 3 at 22. Ultimately, the court stated:

> Considering the history of this case and the recurrence of conduct similar to what was addressed [in the first revocation hearing, for] which the court imposed a sentence of 18 months, it is the judgment of the court that . . . the terms of supervised release have been violated. The supervised release order heretofore entered is revoked. . . . [T]he defendant . . . is hereby sentenced to 24 months custody in the . . . Bureau of Prisons, with a term of life supervised release to follow.

*Id.* at 23.

Several days later the prosecutor sent a letter to the district court and defense counsel, explaining that she had confused Defendant's case with a similar case and had therefore made "a misstatement" at the March 20 hearing. She had referenced computer equipment containing a lot of "adult pornography," which "was inaccurate." *Id.*, Vol. 4 at 1. Rather, Defendant was in possession of two cell phones at the time of his arrest, one that contained sexually explicit adult images, but he did not have any "other 'computer' equipment." *Id.*

On March 29 the district court held a hearing to address the letter. After the prosecutor summarized her mistake, the court stated its position—that the misstatement did not impact Defendant's sentencing. It referred to the "compounding of the violations," in that this was Defendant's second violation of supervised release and the court had imposed 18 months' imprisonment for Defendant's first violation. *Id.*, Vol. 3 at 30. Defense counsel countered that the prosecutor's misstatement violated the plea agreement, and he requested Defendant's admissions be withdrawn and an evidentiary hearing held. The prosecutor replied that she had honored the agreement by recommending an 11-month sentence. The court concluded that the prosecutor had not breached the agreement. It further explained that it was under no obligation to adhere to the parties' agreement, that the prosecutor's "comments in court regarding the pornography had no bearing on [the] decision . . . , whether the pornography was from a computer or whatever it was from," and that "the Court had ample evidence in the presentence report" to impose its sentence. *Id.* at 32. The court denied Defendant's request to withdraw his admissions and to hold an evidentiary hearing, stating that the "sentence will stand." *Id.*

## II.  DISCUSSION

Defendant contends that his sentence was substantively unreasonable, noting that it exceeded the advisory sentencing range of 5 to 11 months' imprisonment.[1]  He also takes issue with the district court's refusal to allow him to withdraw his admissions and to hold an evidentiary hearing because of the prosecution's alleged breach of the plea agreement.  Both arguments are unavailing.

### A.      Substantive Reasonableness

"Substantive reasonableness addresses whether the length of [a] sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)."  *United States v. Damato*, 672 F.3d 832, 838 (10th Cir.) (internal quotation marks omitted), *cert. denied*, 133 S. Ct. 319 (2012).  Our review is for abuse of discretion.  *See United States v. McBride*, 633 F.3d 1229, 1232 (10th Cir. 2011).  "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable."  *United States v. Steele*, 603 F.3d 803, 809 (10th Cir. 2010) (internal quotation marks omitted).

Defendant contends that his sentence was unreasonable because the four supervised-release violations he pleaded guilty to were "pared down" from an alleged 13, were merely "technical," and did not "constitute new criminal conduct."  Aplt. Br. at 9.  He also reasserts the arguments he made in the district court, highlighting

---

[1]     Defendant does not challenge the district court's determination of the Guidelines range.

Defendant's call to a probation officer in Utah and registration as a sex offender in Illinois. He sums up, "A sentence of 24 months was too harsh given the circumstances." *Id.* at 10. But he does not show, as he must, that the district court's sentence was unreasonable. *See McBride*, 633 F.3d at 1232.[2]

Having reviewed the record and applicable law, we cannot say that the district court abused its discretion in sentencing Defendant to 24 months' imprisonment for his second violation of supervised release. The court was mindful of the case's history, including Defendant's possession of pornography and association with a convicted felon, violations similar to those for which the court had, at the conclusion of Defendant's first revocation hearing, sentenced him to 18 months' imprisonment. *See* 18 U.S.C. § 3553(a)(1). The court also reasonably characterized as "very serious" Defendant's "re-violation" of supervised release. R., Vol. 3 at 17; *see* 18 U.S.C. § 3553(a)(2).

As the government points out (and Defendant does not controvert), his failure to report to Utah as directed "was similar to his flight from supervision in Oregon that led to the underlying conviction for Failure to Register as a Sex Offender." Aplee. Br. at 10; *see also Olinger*, 434 F. App'x at 751 (discussing Defendant's conviction for "a sex offense in Oregon" and arrival in "Utah as a fugitive"). Further, this was Defendant's "second breach of trust in a fairly short time." *Steele*, 603 F.3d

---

2   Nor does he mention the factors that a district court is required to consider, set forth in § 3553(a). *See United States v. Cordova*, 461 F.3d 1184, 1188-89 (10th Cir. 2006) (summarizing § 3553(a) factors).

at 809. And recidivism, "[u]nder the guidelines, . . . is generally a reason for increased sentencing severity." *Id.*

"In virtually every case, many sentences would be reasonable." *McBride*, 633 F.3d at 1232. In this case, given the foregoing, we conclude that Defendant's 24-month sentence was reasonable. *See Cordova*, 461 F.3d at 1188 ("[I]t is now axiomatic," in the context of a substantive-reasonableness challenge, "that a sentence in excess of that recommended by the [USSG] Chapter 7 policy statement will be upheld if it can be determined from the record to have been . . . reasonable." (internal quotation marks omitted)).

## B. Plea Agreement

"We review de novo a claim that the government has breached a plea agreement." *United States v. Burke*, 633 F.3d 984, 994 (10th Cir. 2011) (internal quotation marks omitted). To ascertain whether there has been a breach, "we 1) examine the nature of the promise; and 2) evaluate the promise in light of the defendant's reasonable understanding of the promise at the time of the guilty plea." *Id.* (internal quotation marks omitted). "General principles of contract law define the government's obligations under the agreement . . . ." *United States v. Guzman*, 318 F.3d 1191, 1195 (10th Cir. 2003).

Although the parties' plea agreement was not reduced to writing, it is clear from the hearing transcripts that Defendant agreed to admit to four violations of supervised release in exchange for the prosecution's recommendation of 11 months'

- 9 -

imprisonment (while Defendant would request 9 months' imprisonment). Defendant argues that he did not agree to the prosecutor's making "false claims about . . . serious misconduct" and then recommending 11 months' imprisonment. Aplt. Br. at 12. And he claims that the prosecutor's misstatement constituted a breach meriting resentencing before a new judge. *See United States v. Oakes*, 680 F.3d 1243, 1247 (10th Cir. 2012) (observing that "we ordinarily require only resentencing when the breach is an improper statement made by the prosecutor at sentencing" and that "the general rule is that resentencing should take place in front of a different judge." (brackets and internal quotation marks omitted)).

We disagree. Like the district court, we do not discern any breach of the terms of the plea agreement. The prosecutor agreed to recommend 11 months' imprisonment and she did so.

As for the prosecutor's misstatement of fact, it was harmless when made; the district court stated that the error did not affect its sentence. Moreover, the error was cured when the district court held a hearing to be told of the prosecutor's correction. The misstatement was not a ringing of a bell that could not be unrung, as when a prosecutor breaks a plea agreement by making an impassioned argument for a harsh sentence. We see no reason why the court could not ignore a statement later confessed to be false. There would be no cause to require resentencing before another judge.

## III. CONCLUSION

We affirm the judgment of the district court.

Entered for the Court


Harris L Hartz
Circuit Judge